UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | 3:24-cr- 00344-AN |
| v. | **INFORMATION** |
| **CLANCY LOGISTICS INC.** and **TIMOTHY CURTIS CLANCY,** | 42 U.S.C. § 7413(c)(2)(C) and 18 U.S.C. § 2, Tampering with Clean Air Act Monitoring Device (Counts 1-2) |
| Defendants. | |

**THE UNITED STATES ATTORNEY CHARGES:**

**FACTUAL AND LEGAL BACKGROUND**

1. Defendant TIMOTHY CURTIS CLANCY owns and operates CLANCY LOGISTICS INC., a transportation company located at 255B Depot St., Fairview, Oregon. CLANCY LOGISTICS INC. owns, leases, or operates a fleet of semi-trailer trucks. CLANCY LOGISTICS INC. is an Oregon-based company, formed in 2020.

2. Defendant TIMOTHY CURTIS CLANCY also owns and operates CLANCY TRANSPORT INC., which is a transportation company formed in 2012, that owns, leases, or operates a fleet of semi-trailer trucks and shares a premises with, and is associated with, CLANCY LOGISTICS INC., among other companies that own, lease, or operate semi-trailer trucks. CLANCY TRANSPORT INC. also owns and operates a truck repair shop co-located with CLANCY LOGISTICS INC. at 255B Depot St., Fairview, Oregon.

3.       From at least October 24, 2019, through July 18, 2023, within the District of Oregon, and elsewhere, the defendant, TIMOTHY CURTIS CLANCY, and his company CLANCY LOGISTICS INC. tampered with federally-mandated monitoring devices on diesel semi-trailer trucks in violation of the Clean Air Act.

### Regulation of Vehicles Under the Clean Air Act

4.       The purpose of the Clean Air Act is, among other things, "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1). Congress has found that "the increasing use of motor vehicles, has resulted in mounting dangers to the public health and welfare." 42 U.S.C. § 7401(a)(2).

5.       Under the Clean Air Act, Congress instructed the United States Environmental Protection Agency ("EPA") to establish regulations and standards to control emissions from motor vehicles which cause or contribute to air pollution which may reasonably be anticipated to endanger public health or welfare. 42 U.S.C. § 7521(a)(1).

6.       The Clean Air Act regulates "mobile sources," which include motor vehicles and engines and nonroad vehicles and engines. Pursuant to 42 U.S.C. § 7521 and the regulations promulgated thereunder, the EPA established standards limiting the emission of air pollutants from various classes of mobile sources. Heavy-duty engines and heavy-duty vehicles are one such class and are subject to the emissions limits and regulations found at 40 C.F.R. Part 86. 42 U.S.C. § 7521(a)(3).

### Emissions Control Components

7.       To meet tailpipe emission standards, vehicle manufacturers design and install certain hardware devices as components of an emissions control system to manage and treat

engine exhaust. This reduces the levels of pollutants such as nitrogen oxides (NOx), particulate matter (PM), carbon monoxide (CO), and non-methane hydrocarbons (NMHC) that are emitted into the air from tailpipe exhaust and keep those emissions within regulatory limits. Emissions control devices also reduce pollutants in diesel exhaust designated as "hazardous air pollutants" and "mobile source air toxics" under the Clean Air Act.

8. For diesel engines, such emissions control devices include diesel particulate filters (DPF), exhaust gas recirculation (EGR) systems, diesel oxidation catalysts (DOC), and selective catalytic reduction (SCR) systems.

9. These hardware components work in concert with the vehicle's "engine control module" (ECM) which is an on-board computer that receives inputs from various sensors and sends outputs through activators to control engine, vehicle, or equipment functions, including emissions control components. The ECM controls certain emissions-related functions such as injection of diesel exhaust fluid (DEF) into the SCR and recirculation of gases in the EGR.

## The On-Board Diagnostic Monitoring System

10. Pursuant to 42 U.S.C. § 7521(m)(1), the EPA was authorized to promulgate regulations requiring manufacturers to install on-board diagnostic ("OBD") systems on vehicles and engines to monitor emissions control systems to ensure that they function properly. The EPA thus enacted regulations that required manufacturers to install OBD systems on vehicles and engines, including heavy duty diesel engines used in heavy duty diesel trucks with a gross vehicle weight rating greater than 14,000 pounds, "capable of monitoring all emission-related engine systems or components." 40 C.F.R. § 86.010-18. Standardized OBD requirements for these engines have been phased in since 2010 and, as of model year 2013, all engines installed in models in this weight class are required to be equipped with OBDs.

11. The OBD system is software that operates within a vehicle's ECM. The OBD receives inputs from sensors connected to emission control components, and monitors emissions-related engine systems and functions. If an emissions-related malfunction or problem occurs, the OBD system causes a malfunction indicator light (MIL) to be illuminated on the vehicle's dashboard and a diagnostic trouble code (DTC) to be stored in the OBD's memory. These functions facilitate the detection and diagnosis of a malfunction in the emissions control system during inspections and repairs. If the malfunction is significant and is not resolved, the OBD system may limit the top speed of some vehicles to as low as five miles per hour (an effect commonly referred to as "limp mode" or "power reduced mode"), providing an incentive for the vehicle's operator to seek repairs.

### Methods Used to Disable Vehicles' Emissions Controls and Monitoring Systems

12. One method used to disable a vehicle's emissions control system is to remove the portion of the exhaust system that contains emissions control components such as the DPF, DOC and SCR and replace it with a section of hollow exhaust tubing or a "straight pipe." Another method used to disable the emissions control system is to remove the DPF, DOC and SCR, hollow out the functioning portion of the devices so only the casing remains, and re-weld the casing into the exhaust system to create the false appearance that the emissions controls are intact. Both methods allow the exhaust to be emitted from the tailpipe without treatment.

13. The EGR and the diesel engine fluid (DEF) injection component of the SCR system can be disabled physically or electronically. One method to physically disable the EGR is to install "block plates" that cover the EGR valve and prevent the recirculation of exhaust.

14. As part of the disabling of the vehicle's emission control system, the ECM and OBD must also be manipulated. This requires tampering with the ECM and OBD software so

**Information**                                                                                                                                                                       **Page 4**

that their emissions-related functions are overridden. This tampering is commonly referred to as "tuning" or "reflashing" and the software used to manipulate the ECM and OBD is referred to as a "tune." Individuals who manufacture and install tunes are commonly referred to as "tuners." Tunes can be installed onto a vehicle's OBD using a laptop computer that is connected to the vehicle's OBD through the OBD port. Alternatively, tunes can be installed using a device called a "tuner" that is connected to the OBD through the OBD port.

15. This tuning disables the OBD's monitoring function and prevents the MIL from illuminating on the dashboard and prevents the DTC from being stored in the OBD. This serves to conceal the tampering of the emissions controls. It also prevents the vehicle from entering "limp mode." Tuning may allow the vehicle to run with increased horsepower, torque, and fuel efficiency, and can reduce costs of maintaining and repairing the emissions control system once the hardware emissions components are disabled or deleted. Such tuning causes significantly increased pollutant emissions, exceeding the emission limits mandated under the Clean Air Act, to be released into the atmosphere from the vehicle's tailpipe.

16. A "deleted" vehicle is a vehicle whose emissions control components have been removed or disabled, and whose OBD system has been overridden so that it cannot monitor and address malfunctions in the emissions control system.

17. Tuning an OBD to prevent it from detecting the removal of emission control systems constitutes tampering with and rendering inaccurate a monitoring device required under the Clean Air Act.

**Factual Overview**

18. From at least October 24, 2019, through July 18, 2023, within the District of Oregon, and elsewhere, the defendant, TIMOTHY CURTIS CLANCY, tampered with the OBD

systems and caused others to tamper with the computerized OBD systems of at least thirteen Class 8 diesel semi-trailer trucks owned or operated by defendant TIMOTHY CURTIS CLANCY's companies, including CLANCY TRANSPORT INC. and CLANCY LOGISTICS INC., to prevent the OBDs from detecting malfunctions caused by the deletion of the vehicles' emission control systems, in violation of section 113(c)(2)(C) of the Clean Air Act, 42 U.S.C. 7413(c)(2)(C).

19.   As part of this process, TIMOTHY CURTIS CLANCY directed employees of his companies to disable and remove the hardware of emissions components of the vehicles operated by CLANCY TRANSPORT INC. and CLANCY LOGISTICS INC. That process involved removing exhaust systems and their corresponding emissions control components from the vehicles, hollowing out the functioning portion of the devices so only the casing remained, and re-installing the casing to create the false appearance that the emissions controls were intact. The vehicles' OBDs were then tuned so that they could no longer detect the removal of the control equipment.

20.   Defendant TIMOTHY CURTIS CLANCY and his companies tampered with the OBDs on their diesel semi-trailer trucks so that they could operate the vehicles with real or perceived increased performance and fuel efficiency, and reduce or eliminate the cost and burden associated with maintaining the vehicles, at the expense of the pollutants being emitted from the vehicles.

### COUNT 1
**(Clean Air Act Tampering)**
**(42 U.S.C. § 7413(c)(2)(C) and 18 U.S.C. § 2)**

21.   From at least in or about 2020 and continuing until in or about July 2023, within the District of Oregon, the defendant, CLANCY LOGISTICS INC., did knowingly falsify,

tamper with, render inaccurate, and fail to install, monitoring devices and methods required to be maintained under the Clean Air Act, that is, after removing or altering the emissions control equipment on at least three Class 8 diesel trucks, CLANCY LOGISTICS INC. modified the on-board diagnostic (OBD) system on the trucks to prevent the OBD from detecting the removal of such control equipment.

In violation of Title 42, United States Code, Section 7413(c)(2)(C) and Title 18, United States Code, Section 2.

## COUNT 2
### (Clean Air Act Tampering)
### (42 U.S.C. § 7413(c)(2)(C) and 18 U.S.C. § 2)

22. From at least in or about October 2019 and continuing until in or about July 2023, within the District of Oregon, the defendant, TIMOTHY CURTIS CLANCY, did knowingly falsify, tamper with, render inaccurate, and fail to install, monitoring devices and methods required to be maintained under the Clean Air Act, that is, after removing or altering the emissions control equipment on at least thirteen Class 8 diesel trucks, CLANCY modified the on-board diagnostic (OBD) system on the trucks to prevent the OBD from detecting the removal of such control equipment.

In violation of Title 42, United States Code, Section 7413(c)(2)(C) and Title 18, United States Code, Section 2.

Dated: September 13, 2024                                  Respectfully submitted,

NATALIE K. WIGHT
United States Attorney

*/s/ Andrew Ho*
ANDREW HO, OSB #185047
Assistant United States Attorney